On motion of Mr. Rogers, of counsel for the heirs at law of Samuel Carlisle, and affidavit filed, rule to show cause why the report should not be set aside, the reference stricken out, and the party let into a trial at bar.
The affidavit stated that the amicable action in this case was fraudulently and collusively entered into between the plaintiff and the defendant, who is an administrator and without assets; on a claim by David Carlisle against the estate of his father, Samuel Carlisle, after such claim had been prosecuted and failed in chancery; that the referees nominated under the rule of court and in pursuance of the said collusive agreement, were not appointed by the prothonotary agreeable to law; that no notice of the reference was given to the heirs at law of Samuel Carlisle, that the referees went into the examination and hearing of the cause first in deponent's absence, and afterwards by adjournment, contrary to his protest and plea that the whole matter had been settled by the suit in chancery; that deponent has a good legal defence to the whole claim, c. c. *Page 319 
It was admitted that the appointment of the freeholders was made by a deputy of the prothonotary in his absence; and the court directed the attention of counsel to the question whether a deputy prothonotary could legally appoint the referees in an amicable action against an executor or administrator so as to bind the real estate of the deceased.
The act of assembly (Digest, 225) provides that "the real estate of the deceased shall not be liable to be taken in execution upon, and shall not be bound by, a judgment against his executor or administrator, unless such judgment be rendered upon a verdict or an inquisition, or upon the report of the referees, on a rule of reference entered into in the following manner, that is to say, upon application of the parties to the clerk or prothonotary in vacation, or to the court in term time; — or if the defendant being summoned fail to appear, or appearing neglect or refuse so to plead as to put the cause at issue in order for a trial by jury, upon the application of the plaintiff to the court, — there shall be entered a rule of reference of all matters in controversy to three judicious and impartial freeholders of the county, to be appointedby the clerk, prothonotary or court, to whom the application is made, judgment to be rendered on their report, or the report of a majority of them.
Wm. H. Rogers, in support of the motion:
The deputy prothonotary has no power to do this act. He cannot do any act but by express authorization from his principal havingpower to delegate such duty. Our laws give no authority to the prothonotary to appoint or have a deputy, except for strictly ministerial purposes. The act to provide for the better regulation of the public offices (Digest, 452,) requires the prothonotaries, clerks, c. c. to keep their offices open andattend for the transaction of business, at all times (Sunday excepted,) "Provided nevertheless, That it shall be lawful for a deputy of any of the said officers to attend for the performance of such services as are strictly ministerial.
The only other act of assembly which speaks of the deputy of the prothonotary, is a supplement passed in 1835, (8 Del. Laws, 361,) to the act directing the manner of suing out attachments. The original act, passed in 1770, (Digest, 46,) directs that no attachment shall issue against a residenter, until oath be made of the debt, c., which oath may be administered by "the officer that grants the writ, or by any judge," c., and the supplement of 1835 authorizes the oath to be administered by the deputy of such officer. This act assumes, that before its passage a deputy prothonotary could not administer an oath. There is, therefore, no authority derived from our acts of assembly, for a deputy prothonotary to appoint referees. *Page 320 
By the principles of the common law, a deputy cannot act unless his principal is expressly authorized to delegate the power. Neither a judicial nor a ministerial officer can appoint a deputy, without express grant of power to do so. Cro. Car. 557; 3Mod. 147, 150; 1 Roll's Abridg. 274; 1 Cov. Hughes' Dig., 487; Reybold vs. Dodd, 1Harrington 301.
J. A. Bayard, contra:
It is the constant practice for this service to be rendered by deputy, and in construing the powers of its officers, the court will regard long practice. Ministerial power may be delegated, judicial cannot; and the reason is, that a judicial act creates no responsibility to the party, and a ministerial does. Whether the power be ministerial or not, depends on the person who is to exercise it. The administering an oath by a judge is a judicial act; by a clerk, it is strictly ministerial. The power may be accompanied with a discretion, and yet be ministerial; as in the case of sheriffs taking bail bonds; revenue officers taking bonds, c. A ministerial officer might, at common law, appoint a deputy. Cro. Car.; Salk. 65. A sheriff may appoint a deputy; and a prothonotary is a ministerial officer, and as such, had at common law, the power to appoint a deputy. This is not restricted by any act of assembly. The act referred to, embraces judicial officers, the register among others; and the proviso refers to the acts of such officers, as distinguished from acts merely ministerial. It prohibits the delegation of judicial functions only; which was the extent of the decision inReybold vs. Dodd.
The power of appointing deputies by ministerial officers existed at common law, is inherent in the office, and does not arise from the act of assembly; that act gives the power even to judicial officers to appoint deputies for ministerial purposes.
Rogers, sen'r., in reply, denied that the practice had been general, to perform such acts by deputy; but if it were so, it would not change the law. The character of our prothonotary cannot be tested by any common law clerk. He has powers conferred by statute, and the same act restricts the exercise of them. No clerk at common law could appoint freeholders to try causes and render judgments to bind lands. And shall not the act which confers this power, be allowed to limit its exercise to the prothonotary alone?
It is argued that the power should be tested by the common law character of the officer, and not by the act itself; on the contrary, the legislature may confer a judicial power on an executive officer, and make him as to this, a judge. Such is the power under consideration; another is the reference of a case to a prothonotary, to ascertain the amount of a judgment. Just as if the court ordered the *Page 321 
amount of a judgment to be ascertained by A., which is also common by consent. Would it be competent in such case for A. to deputise B. to do it?
The question is not new. In the case of Richards vs. Dusar,
in the Court of Appeals, June term, 1816, it was much considered. That was an attachment; and the judgment was reversed, on the ground that the oath was administered by a deputy of the clerk: and this because the power of administering oaths is by law conferred on the clerk, and is personal to him. The power of appointing referees is of the same character. It is conferred by law on the court in session, and on the prothonotary in vacation; the discretion is a delicate one; the power of the referees important; their report becomes a judgment, binding on lands. The character of the power is the same, whether exercised by the court or the clerk, a judicial power and one which may not be delegated.
Per Curiam:
We cannot entertain a doubt on the question; and we directed the attention of counsel to it in the first place, because we thought the objection fatal. We desired, however, to hear it argued, and it has been ably discussed. It is clear against the power of the deputy prothonotary to appoint the referees. It is so by the terms of the act of assembly; by the uniform practice and understanding, at least in the other counties, with the practice in which we are more familiar; by the decision of the same principle in the Court of Appeals, in the case referred to of Richards vs. Dusar; and, according to n very strong impression on my mind, by a decision of the very question, by the Supreme Court in Kent.
But the principle of the case of Richards vs. Dusar,
covers the case, if indeed the act there was so strong an example of personal trust as the present. In each case the power is devolved by the law on the prothonotary; and the appointment of referees to try causes, and whose report is to bind the real estate of deceased persons, and conclude the heir, is a more important trust, and more necessary to be restricted to the officer himself than the administering an oath.
We think we may safely lay down this principle; that wherever the legislature has by statute, conferred upon a ministerial officer, such as the prothonotary, a power requiring the exercise of judgment and sound discretion, for the protection of interests which are manifestly, from the face of the statute, the subjects of legislative solicitude; he cannot delegate the trust to another, but must faithfully discharge it himself. If he delegate the power to another to be exercised in his absence, the interests intended to be protected by the act cannot be affected by such an exercise of power. *Page 322 
We must look to the character of the act, and the words of the law conferring the power to do it, to see if it be such an act as can be done by deputy. And we cannot now think of any case but where the duty is strictly ministerial. The sheriff has may duties which we should consider as not ministerial; but, without going out of the case to decide as to any other officer, we think it is not competent for a deputy prothonotary to appoint referees under the act of assembly referred to.
 Rule absolute.